No. 13-50075

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

In the Matter of:
CLIFFORD J. WOERNER; GAIL S. WOERNER
     Debtors

BARRON & NEWBURGER, P.C.
     Appellant

v.

TEXAS SKYLINE, LIMITED; PECOS & 15th, LIMITED; UNITED STATES TRUSTEE; SKYLINE INTERESTS, LLC
     Appellees

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS (AUSTIN DIVISION)

**MOTION FOR REHEARING EN BANC**

**Stephen W. Sather**
**Barbara M. Barron**
**Barron & Newburger, P.C.**
**1212 Guadalupe, #104**
**Austin, TX  78701**
**(512) 476-9103**
**Fax:  (512) 476-9253**
**Attorneys for Appellant**

No. 13-50075

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

In the Matter of:
CLIFFORD J. WOERNER; GAIL S. WOERNER
     Debtors

BARRON & NEWBURGER, P.C.
     Appellant

v.

TEXAS SKYLINE, LIMITED; PECOS & 15th, LIMITED; UNITED STATES
TRUSTEE; SKYLINE INTERESTS, LLC
     Appellees

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS (AUSTIN DIVISION)

CERTIFICATE OF INTERESTED PARTIES

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Federal Rule of Appellate Procedure 28.2.1 have an interest in the outcome of this case. These representations are made in order that the Judges of this Court may evaluate the possible disqualifications or recusal.

1.     Barron & Newburger, P.C.

Appellant

2.     Stephen W. Sather and Barbara M. Barron, Barron & Newburger, P.C., Attorneys for Appellant

3.     Clifford J. Woerner and Gail S. Woerner
Debtors

4.     John Patrick Lowe
Chapter 7 Trustee

5.     Clifford White, Executive Director of the Office of the United States Trustee
Appellee

6.     Noah Mariano Schottenstein and Deborah Bynum
Attorneys for U.S. Trustee

7.     Texas Skyline, Ltd., Pecos & 15th, Ltd. and Skyline Interests, LLC ("Texas Skyline Parties"), Appellees

8.     Dennis Ferstler
Principal of Texas Skyline Parties

9.     William Johnson
Attorney for Texas Skyline Parties

_/s/Stephen W. Sather_
Stephen W. Sather

## Basis for Rehearing

This case qualifies for *en banc* rehearing pursuant to Fed.R.App.P. 35(b)(1) for the reason that the case presents an issue of exceptional importance, to wit: whether the holding of *In re Pro-Snax Distributors, Inc.*, 157 F.3d 414 (5th Cir. 1998) that professional services result in a "tangible, identifiable and material benefit" in order to be compensated conflicts with the statutory language of 11 U.S.C. § 330(a) and decisions from at least four other circuits, *In re Ames Department Stores, Inc.*, 76 F.3d 661 (2nd Cir. 1996); *In re Top Grade Sausage, Inc.*, 227 F.3d 123 (3rd Cir. 2000); *In re Veltri Metal Products*, 189 Fed.Appx. 385 (6th Cir. 2006); *In re Taxman Clothing Co.*, 49 F.3d 310 (7th Cir. 1995), as well as this Court's other precedents with regard to allowance of professional fees in Chapter 11, *e.g., In re Pilgrim's Pride Corp.*, 690 F.3d 650 (5th Cir. 2012). Further, the members of the panel unanimously recommended rehearing *en banc* in a special concurrence.

# TABLE OF CONTENTS

**CERTIFICATE OF INTERESTED PARTIES** ........................................... i

**Basis for Rehearing** ....................................................................... iii

**Statement of the Issue** .................................................................. 2

**Statement of the Case** .................................................................. 2

**Factual Background** ..................................................................... 3

**Argument** ..................................................................................... 6

**CERTIFICATE OF COMPLIANCE WITH RULE 32(A)** .................... 15

# LIST OF AUTHORITIES

## Cases

*Barron & Newburger, P.C. v. Texas Skyline, Ltd. (In re Woerner)*, 2014 U.S. App. 13486 (5th Cir. 2014) ..................................................... 3, 12

*Grant v. George Schumann Tire & Battery Co.*, 908 F.2d 874, 883 (11th Cir. 1990) .......................................................................................... 10

*In re Ames Department Stores, Inc.*, 76 F.3d 661 (2nd Cir. 1996) ........... iii, 9

*In re ASARCO, L.L.C.*, 751 F.3d 291 (5th Cir. 2014) ..................................... 7

*In re Broughton Ltd. P'ship*, 474 B.R. 206 (Bankr. N.D. Tex. 2012) .......... 11

*In re First Colonial Corp. of Am.*, 544 F.2d 1291 (5th Cir. 1977) ................ 8

*In re Kohl*, 95 F.3d 713 (8th Cir. 1996) ...................................................... 10

*In re Lederman Enters., Inc.*, 997 F.2d 1321 (10th Cir. 1993) .................... 10

*In re Melp*, 179 B.R. 636 (Bankr. E.D. Mo. 1995) ...................................... 10

*In re Pilgrim's Pride Corp.*, 690 F.3d 650 (5th Cir. 2012) ........................... iv

*In re Pro-Snax Distributors, Inc.*, 157 F.3d 414 (5th Cir. 1998) iii, 2, 3, 6, 9, 10, 11, 12, 13

*In re Reed*, 890 F.2d 104, 106 (8th Cir. 1989) ........................................... 10

*In re Smith*, 317 F.3d 918, 926 (9th Cir. 2002) .......................................... 10

*In re Taxman Clothing Co.*, 49 F.3d 310 (7th Cir. 1995) ................... iii, 7, 10

*In re Top Grade Sausage, Inc.*, 227 F.3d 123 (3rd Cir. 2000) ................ iii, 9

*In re UNR Indus., Inc.*, 986 F.2d 207 (7th Cir. 1993) ................................... 8

*In re Veltri Metal Products*, 189 Fed.Appx. 385 (6th Cir. 2006) ................. iii

*In re Xebec*, 147 B.R. 518 (B.A.P. 9th Cir. 1992) ...................................... 10

*Kaye v. Hughes & Luce, LLP (In re Gadzooks, Inc.)*, 2007 U.S. Dist. LEXIS 50929 (N.D. Tex. July 13, 2007) ................................................... 11

*Lamie v. U.S. Trustee*, 540 U.S. 526, 124 S. Ct. 1023, 157 L. Ed. 2d 1024 (2004) .............................................................................. 7, 9, 11

*Mass. Mut. Life Ins. Co. v. Brock*, 405 F.2d 429 (5th Cir. 1968) ................. 8

## Statutes

11 U.S.C. § 330 ................................................... iii, 2, 7, 8, 9, 10, 11, 13

## Rules

Fed.R.App.P. 28.2.1 ....................................................................................... i

Fed.R.App.P. 32(a)(5) ................................................................................ 17

Fed.R.App.P. 32(a)(6) ................................................................................ 17

Fed.R.App.P. 32(a)(7)(B)(iii) ..................................................................... 17

Fed.R.App.P. 35(6)(2) ................................................................................ 17

Fed.R.App.P. 35(b)(1) ....................................................................................iii

**Other Authorities**

140 Cong. Rec. 8383 (1994) (setting out amendment 1645 to S. 540, April
    21, 1994) ................................................................................................ 10
*Collier on Bankruptcy* (16th ed. 2014) ........................................................... 8
H.R. 5116, 103d Cong. (as reported by H. Comm. on the Judiciary, October
    22, 1994) ................................................................................................ 10
H.R. Rep. No. 95-595 (1978).......................................................................... 9
Pub. L. No. 103-394, § 224, 108 Stat. 4106 (1994) ....................................... 9
S. 540, 103d Cong. § 309 (as reported by S. Comm. on the Judiciary, Oct.
    28, 1993) ............................................................................................ 9, 10
William L. Medford, *Further Evolution of Professional Compensation
    Under Pro-Snax:  The New and Improved Standard for Getting Paid*, Am.
    Bankr. Inst. J. (July 2012)...................................................................... 12

No. 13-50075

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

In the Matter of:
CLIFFORD J. WOERNER; GAIL S. WOERNER
  Debtors

BARRON & NEWBURGER, P.C.
  Appellant

v.

TEXAS SKYLINE, LIMITED; PECOS & 15th, LIMITED; UNITED STATES
TRUSTEE; SKYLINE INTERESTS, LLC
  Appellees

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS (AUSTIN DIVISION)

## **MOTION FOR REHEARING *EN BANC***

TO THE HONORABLE FIFTH CIRCUIT COURT OF APPEALS:

  COMES NOW Barron & Newburger, P.C. ("BNPC"), and submits this

Motion for Rehearing *En Banc*, showing the Court as follows:

  This is an extraordinary case in which the panel affirmed the lower

courts but in its entirety recommended *en banc* rehearing to correct what it

believes (as does Barron & Newburger, P.C.) is an erroneous ruling that has caused substantial confusion in the lower courts.

## Statement of the Issue

The issue presented for rehearing *en banc* is whether the "tangible, identifiable and material benefit" standard identified in *In re Pro-Snax Distributors, Inc.*, 157 F.3d 414 (5th Cir. 1998) is inconsistent with the text of 11 U.S.C. § 330(a), decisions from other circuits and this Court's other precedents with regard to allowance of professional fees under title 11.

## Statement of the Case

This is an appeal from an order of the United States District Court with respect to the Bankruptcy Court's order on Barron & Newburger's application for approval of professional compensation in a bankruptcy case. R. 494. Barron & Newburger, P.C. filed an amended application for professional fees on December 19, 2011. R. 57. The firm requested fees in the amount of $130,656.50 and expenses in the amount of $5,793.37 (after voluntary reductions of $24,702.00). The United States Trustee, as well as Texas Skyline, Ltd., Pecos & 15th, Ltd and Skyline Interests, LLC ("Texas Skyline parties") filed objections to the amended application. R.E. 10 and 11. The Court conducted a hearing upon the fee application on March 9, 2012. R.E 14. The Court announced an oral ruling upon the application on April 11, 2012.

R.E. 16.  The Court entered an order awarding fees in the amount of $19,409.00 and expenses in the amount of $5,793.37 on April 13, 2012.  R. 109.  Appellant timely filed its Notice of Appeal from the Bankruptcy Court's Order on April 26, 2012.  R. 111.

On July 15, 2014, the panel rendered an opinion which affirmed the opinions of the lower courts.  *Barron & Newburger, P.C. v. Texas Skyline, Ltd. (In re Woerner)*, 2014 U.S. App. 13486 (5th Cir. 2014).  However, the three judges on the panel unanimously joined in a special concurrence stating, "we urge reconsideration of the standard in *Pro-Snax* by this court sitting *en banc*."  *Id.*, at *31.

## Factual Background

On May 13, 2010, Debtors Clifford Woerner and Gail Woerner filed a petition under chapter 11 of title 11 of the United States Code.  R. 183.  The bankruptcy filing was precipitated by the Debtors' inability to resolve issues arising in a state court suit brought by the Texas Skyline Parties.  R.E. 14, p. 57.

John T. Bauer, II filed a Motion to Convert the Case to Chapter 7.  After three days of hearings, the Court entered an Order converting the case to one under chapter 7 of title 11.  R. 208.  John P. Lowe was appointed as Chapter 7 trustee.  *Id.*

On September 3, 2011, Barron & Newburger, P.C. filed its First and Final Fee Application. R. 7. The Application classified the services rendered into fees by event as required by the Local Rules. In its classification, the firm organized all time related to the Texas Skyline Parties, John T. Baker, II and First State Bank into three separate matters. R. 15. Both the U.S. Trustee and the Texas Skyline Parties objected to the fees thus classified on the ground that, among other things, the time relating to the specific creditors related to dischargeability and could not be compensated.

On December 19, 2011, after extensive discussions with the U.S. Trustee's office and based on its understanding of what the U.S. Trustee wanted in the way of classification, Barron & Newburger, P.C. filed an Amended Fee Application which re-coded its time based upon the type of services rendered rather than the creditor involved. R. 57. In this application, Barron & Newburger voluntarily reduced its fees by $24,702.00, reflecting amounts that were either "no-charged" or were billed at a reduced rate. R. 58. Although the firm continued to provide services to the Debtor until the order substituting counsel was entered, the firm did not bill for any services rendered after the conversion order. *See* R. 104 (last date on which

fees were charged was April 20, 2011).  The United States Trustee and the Texas Skyline Parties objected once again.  R.E. 10 and 11.

The Court conducted a hearing on the amended fee application on March 9, 2012.  The only witnesses to testify at the hearing were Barbara Barron and Stephen Sather on behalf of Barron & Newburger, P.C. and Mark Cohen, who had represented the Debtor in State Court.  Neither one of the objecting parties offered any witnesses.  R.E. 14.  The Court announced its ruling on April 11, 2012.  R.E. 16.  The Court awarded only $19,409.00 in fees out of $130,656.50 requested, representing an 85% reduction.  In announcing its ruling, the Court stated that there were no issues about the competency of the firm or its reputation.  The Court stated:

> The other thing that I want to put on the record in terms of my Ruling this morning is this is not a case, nor has it ever been suggested, about the competency of Barron & Newburger's lawyers, the reputation of the firm and the lawyers that represented the Woerners in this case, or the fee structure.  So I'm not going to spend any time on that because it's not at issue.  No one has challenged, as I pointed out, the competency or experience of either Mr. Sather or Ms. Barron, the applicable rate or their experience.  That's not an issue for purposes of this morning.  And so I'm not going to spend any time on that.

R.E. 16, pp. 4-5.  The Court also overruled an objection made by the Texas Skyline Parties with regard to duplication and overstaffing of the case.  R.E. 16, p. 13.

Notwithstanding the fact that it had no qualms about the quality of the work performed by Barron & Newburger, P.C., the Bankruptcy Court held that the Fifth Circuit's decision in *Matter of Pro-Snax Distributors, Inc.*, 157 F.3d 414 (5th Cir. 1998) required it to find an "identifiable, tangible and material benefit to the bankruptcy estate" from the services performed in order to award fees.  R.E. 16, p. 10.

The Bankruptcy Court entered its order on April 13, 2012.  R. 109.

Barron & Newburger, P.C. appealed the Bankruptcy Court's ruling to U.S. District Judge Sam Sparks.   Judge Sparks affirmed the Bankruptcy Court's ruling with one exception:  he awarded an additional $787.50 in fees for preparing the firm's application for employment.  R. 494.

### Argument

The Special Concurrence by the panel sets out the grounds for rehearing *en banc*.  As a result, Appellant quotes it in its entirety:

> Even though we find no error in the bankruptcy court's use of the *Pro-Snax* standard to resolve the attorney fee application in this case, I write separately to note that the *Pro-Snax***Error! Bookmark not defined.** standard may be misguided.  It appears to conflict with the language and legislative history of § 330, diverges from the decisions of other circuits, and has sown confusion in our circuit.
>
> The plain language of § 330 runs counter to *Pro-Snax*'s holding that only services that produce an actual benefit are compensable.  Section 330 gives a bankruptcy court discretion to determine the amount of reasonable compensation.  But the

statute also constrains that discretion by requiring the court to "tak[e] into account" a set of listed factors, including "whether the services were necessary to the administration of, or beneficial *at the time at which the service was rendered*."  11 U.S.C. § 330(a)(3)(C) (emphasis added).

The statute reinforces this point in an accompanying section:  a court must disallow any compensation when "the services were not reasonably likely to benefit the debtor's estate or necessary to the administration of the case."  § 330(a)(4)(A)(ii)(I) ; *see In re ASARCO, L.L.C*., 751 F.3d 291 (5th Cir. 2014) ("Section 330 states twice, in both positive and negative terms[,] that professional services are compensable only if they are likely to benefit a debtor's estate or are necessary to case administration." (citation omitted)); *In re Ames Dep't Stores, Inc*., 76 F.3d 66, 71 (2d Cir. 1996) (referring to "reasonably likely to benefit the debtor's estate" as an "inverse construction" of § 330(a)(3)(C)), *abrogated on other grounds by Lamie v. U.S. Trustee*, 540 U.S. 526, 124 S. Ct. 1023, 157 L. Ed. 2d 1024 (2004).  Read together, a court may compensate an attorney for services that are "reasonably likely to benefit" the estate and adjudge that reasonableness "at the time at which the service was rendered."

Section 330, then, explicitly contemplates compensation for attorneys whose services were reasonable when rendered but which ultimately may fail to produce an actual benefit. "Litigation is a gamble, and a failed gamble can often produce a large net loss even if it was a good gamble when it was made." *In re Taxman Clothing Co*., 49 F.3d 310, 313 (7th Cir. 1995). The statute permits a court to compensate an attorney for any activities that were "necessary," but also for any good gambles—that is, services that were objectively reasonable at the time they were made—even when those gambles do not produce an "identifiable, tangible, and material benefit.  What matters is that, prospectively, the choice to pursue a course of action was reasonable.

The legislative history of § 330 provides additional support for this reading.  When Congress enacted § 330 in 1978, it relaxed the previously stringent standard bankruptcy courts applied in

reviewing professional fee awards. 3 *Collier on Bankruptcy* ¶ 330.LH[4] (16th ed. 2014). Under the old regime, our court enforced a "strong policy . . . that estates be administered as efficiently as possible." *In re First Colonial Corp. of Am.*, 544 F.2d 1291, 1299 (5th Cir. 1977) (citations omitted), *superseded by statute*, 11 U.S.C. § 330. This policy originated in the idea that "[s]ince attorneys assisting the trustee in the administration of a bankruptcy estate are acting not as private persons but as officers of the court, they should not expect to be compensated as generously for their services as they might be were they privately employed." *Id.* (citation omitted); *see also Mass. Mut. Life Ins. Co. v. Brock*, 405 F.2d 429, 432-33 (5th Cir. 1968) (holding that the interest of the public—especially the debtor and creditors—could limit compensation to a debtor's counsel), *superseded by statute*, 11 U.S.C. § 330.

But "[i]n enacting section 330, Congress intended to move away from doctrines that strictly limited fee awards" and instead provide compensation "commensurate with the fees awarded for comparable services in non-bankruptcy cases." *In re UNR Indus., Inc.*, 986 F.2d 207, 208-09 (7th Cir. 1993) (citing, *inter alia*, H.R. Rep. No. 95-595, at 329-30 (1978), reprinted in 1978 U.S.C.C.A.N. 5963, 6286); *see also 3 Collier on Bankruptcy* ¶ 330.03[a][3]. To that end, § 330 instructed courts to award "reasonable compensation" for "actual, necessary services" "based on the nature, the extent, and the value of such services, the time spent on such services, and the cost of comparable services other than in a case under [the Code]." 11 U.S.C. § 330(a). Congress took a further step in 1994 when it "codif[ied] many of the factors previously considered by courts in awarding compensation and reimbursing expenses." 3 *Collier on Bankruptcy* ¶ 330.LH[5]; see Pub. L. No. 103-394, § 224, 108 Stat. 4106 (1994). In particular, Congress added the language at issue here: 11 U.S.C. §§ 330(a)(3)(C) & 330(a)(4)(A).

The drafting history of those provisions suggests that Congress considered and specifically rejected an actual benefit test. The Senate version contained the seed of the eventual guidelines for reasonable compensation under § 330. *See* S. 540, 103d Cong.

§ 309 (as reported by S. Comm. on the Judiciary, Oct. 28, 1993).  The Bill reported out of the Senate Judiciary Committee differed in at least one important respect from the eventual Act, however.  That Senate draft only instructed courts to consider "whether the services were necessary in the administration of or beneficial toward the completion of a case under [the Bankruptcy Code]."  *Id*.  After adopting a floor amendment, however, the Senate added the words "at the time at which the service was rendered" after "beneficial."  *See* 140 Cong. Rec. 8383 (1994) (setting out amendment 1645 to S. 540, April 21, 1994) S. 540, 103d Cong. § 310 (as passed by Senate, April 26, 1994; *see also Lamie*, 540 U.S. at 539-40 (discussing amendment 1645).  The House version of the legislation did not include any guidelines for determining the reasonableness of attorney compensation.  *See generally* H.R. 5116, 103d Cong. (as reported by H. Comm. on the Judiciary, October 22, 1994).  The legislative process therefore strongly suggests that Congress could not have intended the language in § 330 to impose an actual benefit requirement determinable by a court only at the completion of the case.

Besides contravening the plain effect of § 330's language, the actual benefit test of *Pro-Snax* has put our circuit in unnecessary conflict with our sister circuits.  In light of the plain language of § 330(a)(4)(A) , the Second, Third, and Ninth Circuits have rejected the actual benefit test required by *Pro-Snax*.  In *In re Ames Department Stores, Inc.*, the Second Circuit specifically rejected an approach that would make fee award "contingent upon a showing of actual benefit to the estate," opting instead to give effect to the statute's "reasonably likely to benefit the estate" standard.  76 F.3d at 71.  The Third Circuit rejected the very approach our court adopted in *Pro-Snax*, concluding that it departed from the statute by imposing a "heightened standard" and requiring evaluation "by hindsight." *In re Top Grade Sausage, Inc.*, 227 F.3d 123, 132 (3rd Cir. 2000) *abrogated on other grounds by Lamie*, 540 U.S. 526, 124 S. Ct. 1023, 157 L. Ed. 2d 1024.  Finally, the Ninth Circuit held that § 330(a)(4)(A) superseded its past precedent, which had "requir[ed] that the services actually provide an 'identifiable, tangible and material benefit to the [debtor's] estate.'"  *In re*

*Smith*, 317 F.3d 918, 926 (9th Cir. 2002) (quoting *In re Xebec*, 147 B.R. 518, 523 (B.A.P. 9th Cir. 1992)). In addition, the Seventh Circuit has applied a similar rule, without specifically relying on the post-1994 guidelines. *See In re Taxman Clothing Co.*, 49 F.3d at 314-16 (holding that the bankruptcy court abused its discretion in granting a fee award to an attorney whose preference action did not have a reasonable likelihood of benefiting the estate).

While *Pro-Snax* purported to consider the post-1994 guidelines of § 330(a), its lone citation for its actual benefit test, *In re Melp*, interpreted the pre-1994 version of § 330. See 179 B.R. at 639 (quoting pre-1994 language). Indeed, the only other circuit precedents to apply an actual benefit requirement came to that conclusion prior to 1994 or based entirely on pre-1994 precedent for determining "reasonable compensation." *See In re Kohl*, 95 F.3d 713, 714 (8th Cir. 1996) ("[A]n attorney fee application in bankruptcy will be denied to the extent the services rendered were for the benefit of the debtor and did not benefit the estate." (quoting *In re Reed*, 890 F.2d 104 (8th Cir. 1989)); *In re Lederman Enters., Inc.*, 997 F.2d 1321, 1323 (10th Cir. 1993) ("An element of whether the services were 'necessary' is whether they benefited the bankruptcy estate."); *Grant v. George Schumann Tire & Battery Co.*, 908 F.2d 874, 883 (11th Cir. 1990) (interpreting pre-1994 § 330 as requiring that attorney's appeal bring a benefit to the estate). As discussed above, though, whereas the pre-1994 language did not provide guidance on whether to consider the reasonable likelihood a service would benefit the estate, the post-1994 language clearly foreclosed an actual benefit test by requiring that the court evaluate the likelihood of benefit to the estate at the time the service was rendered.

The *Pro-Snax* actual benefit test has led to confusion among the courts of our circuit. According to one Fifth Circuit bankruptcy practitioner, "the *Pro-Snax* decision is of constant discussion and concern." William L. Medford, *Further Evolution of Professional Compensation Under Pro-Snax: The New and Improved Standard for Getting Paid*, Am. Bankr. Inst. J., July

2012, at 16. As one bankruptcy court observed in its survey of post-*Pro-Snax* rulings:

> [A]ll courts interpreting *Pro-Snax* have reached the conclusion that some sort of retrospective analysis is required. Lower courts have adopted differing views of what type of retrospective analysis should be employed and have disagreed whether a prospective analysis may be considered in determining whether *Pro-Snax* is satisfied.

*In re Broughton Ltd. P'ship*, 474 B.R. 206, 209-10 n.5 (Bankr. N.D. Tex. 2012) (collecting cases). So, for example, one district court interpreted the *Pro-Snax* requirement as a threshold issue of entitlement to compensability under § 330(a)(1)(A), not a gloss on the guidelines for reasonable compensation under § 330(a)(3) and (a)(4). *Kaye v. Hughes & Luce, LLP* (*In re Gadzooks, Inc.*), No. 3:06-CV-0186-3 B, 2007 U.S. Dist. LEXIS 50929, 2007 WL 2059724, *9 (N.D. Tex. July 13, 2007). Yet *Pro-Snax* did not purport to alter the threshold compensability of services by interpreting "necessary" services to include only those that result in an actual benefit to the estate. By contrast, in *In re Broughton* characterized *Pro-Snax* as a practical "problem" and contorted *Pro-Snax* to conclude that it permits a fee award to "a professional [who] was justifiably pursuing a legitimate, realizable goal of the fiduciary client." 474 B.R. at 213, 218. The splintered approaches to applying *Pro-Snax* underscore the difficulty of squaring that decision with the statute, and the practical importance of doing so.

We note that application of the § 330(a) standard without *Pro-Snax* would probably lead to the same result in this case. The only fees that B & N adequately challenge on appeal— amending schedules and statements of financial affairs—were not reasonably likely to benefit the estate even when counsel rendered those services. We also note that overturning the holding on attorney's fees in *Pro-Snax* would not alter that case's principal holding, affirmed by the Supreme Court in *Lamie*, that debtor's attorneys may not recover fees for services

rendered after the case was converted to an involuntary Chapter 7 bankruptcy.

For these reasons, we urge reconsideration of the standard in *Pro-Snax* by this court sitting en banc.

*Barron & Newburger, P.C. v. Texas Skyline, Ltd., supra*, at *20-31.

Appellant does disagree with the panel's conclusion that applying the proper standard "probably" would not change the result in the case. In its principal brief, Appellant argued that, with the exception of two areas with respect to which the firm chose not to request fees, that its services were "objectively reasonable" at each stage of the proceedings. Appellant offered an extensive discussion of why the services performed by the firm were reasonably likely to succeed at the time they were rendered. *See* Appellant's Brief, pp. 31-40. Appellant also argued that services related to amending schedules were allowable under *any* standard because counsel had a mandatory duty to amend the schedules and statement of financial affairs upon learning that they were inaccurate. These arguments provide a substantial basis for reversing the lower court's opinions and ordering a new hearing under the proper legal standard.

In the specific case of Appellant, granting rehearing en banc will allow Appellant to seek allowance of its fee unhindered by the erroneous language in *Pro-Snax*. However, it will also benefit the bar and the lower

courts in this Court which have tried, and continue to try, to make sense of *Pro-Snax*'s troubling language.

WHEREFORE, PREMISES CONSIDERED, Appellant Barron & Newburger, P.C. prays that the court grant *en banc* rehearing in this case and for such other and further relief, at law and in equity, to which it may be entitled.

Respectfully submitted,

**BARRON & NEWBURGER, P.C**
1212 Guadalupe Street, Suite 104
Austin, Texas 78701
(512) 476-9103
(512) 476-9253 (Facsimile)

/s/ Stephen W. Sather

By: _____
Barbara M. Barron
Texas Bar No:  01817300
bbarron@bnpclaw.com
Stephen W. Sather
Texas Bar No:  17657520
ssather@bnpclaw.com

ATTORNEYS FOR BARRON & NEWBURGER, P.C.

## <u>CERTIFICATE OF SERVICE</u>

By my signature below, I hereby certify that a true and correct copy of the foregoing was sent via first class mail, postage prepaid, this 29th day of July, 2014, to the following:

Noah Schottenstein
Department of Justice
Executive Office for U.S. Trustees
20 Massachusetts Ave., NW, Suite 8100
Washington, D.C.  20530

William P. Johnson
Duggins Wren Mann & Romero, LLP
600 Congress, Suite 1900
Austin, TX  78701
P.O. Box 1149
Austin, TX   78767

*/s/Stephen W. Sather*
Stephen W. Sather

## <u>CERTIFICATE OF COMPLIANCE WITH RULE 32(A)</u>

1.     This brief complies with the type-volume limitations of Fed.R.App.P. 35(6)(2) because this brief contains thirteen pages.

2.     This brief complies with the typeface requirements of Fed.R.App.P. 32(a)(5) and the type style requirements of Fed.R.App.P. 32(a)(6) because this brief has been prepared in a proportionately spaced typeface using Microsoft Word 2010 in 14-point Times New Roman font.

<em><u>/s/Stephen W. Sather</u></em>

# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**FILED**

July 15, 2014

Lyle W. Cayce
Clerk

No. 13-50075

---

In the Matter of:  CLIFFORD J. WOERNER; GAIL S. WOERNER,

Debtors

---

BARRON & NEWBURGER, P.C.,

Appellant

v.

TEXAS SKYLINE, LIMITED; PECOS & 15TH, LIMITED; UNITED STATES TRUSTEE; SKYLINE INTERESTS, L.L.C.,

Appellees

---

Appeals from the United States District Court
for the Western District of Texas

---

Before REAVLEY, PRADO, and OWEN, Circuit Judges.

EDWARD C. PRADO, Circuit Judge:

This case concerns a bankruptcy court's order reducing the fees a debtor's counsel received under 11 U.S.C. § 330.  On May 13, 2010, on the eve of a major state court judgment against him, Debtor Clifford Woerner

("Woerner")[1] filed a voluntary petition under Chapter 11 of the Bankruptcy Code. Appellant Barron & Newburger ("B & N"), a law firm, represented Woerner in his Chapter 11 bankruptcy. On April 20, 2011, the bankruptcy court converted the case to Chapter 7. Its services terminated, B & N filed an application for fees in excess of $130,000. The bankruptcy court allowed approximately $20,000 and disallowed the remainder, finding that the additional fees were unreasonable. The district court affirmed. B & N appeals, contending that the bankruptcy court misapplied Fifth Circuit precedent and 11 U.S.C. § 330 in reducing the fees awarded to it. We affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

### A. Events Before Woerner Filed for Bankruptcy

In 2006, Woerner and Texas Skyline, Ltd. ("Texas Skyline") formed a limited partnership for the purpose of a real estate venture. Within the partnership, DPRS—a company Woerner owned—was the sole general partner, Woerner was a limited partner with a 49.99% interest in the partnership, and Texas Skyline was the sole investor and a limited partner in the project. Over the course of the next three years, Woerner misappropriated funds from the partnership for personal use. When Texas Skyline discovered Woerner's activities, it sued him in state court for breach of the partnership agreement and breach of fiduciary duties. The case proceeded to a bench trial on April 27, 2010. After the parties rested, the state court announced an oral ruling in favor of Texas Skyline and set a remedies hearing for May 14, 2010.

Woerner and his state-court trial counsel met with B & N on May 4, 2010 to discuss filing for bankruptcy. Woerner was "agitated" and wanted to find counsel that would "stand up to the Texas Skyline parties," although "he

---

[1] Woerner filed a joint petition with his wife Gail Woerner. Because Gail Woerner was subsequently dismissed from the case, we refer to Woerner as the only debtor.

wanted to make sure that every creditor with legitimate claims against him was paid." B & N agreed to the representation and filed Woerner's voluntary petition for Chapter 11 bankruptcy relief on May 13—the night before the state-court remedies hearing. That filing triggered the Bankruptcy Code's automatic stay provision, which brought the state-court proceeding to a halt. *See* 11 U.S.C. § 362(a).

## B. B & N Litigates Woerner's Chapter 11 Case

In the ensuing eleven months, B & N provided services that it claimed were worth $134,800 in legal fees. These services included the filing of a mandatory disclosure statement. On May 18, 2010, Woerner filed mandatory disclosure documents with the bankruptcy court—namely, schedules and a statement of financial affairs.

These services also included efforts to defend Woerner in adversary proceedings to prevent Woerner from discharging liabilities. On August 4, 2010, Texas Skyline initiated an adversary proceeding with the bankruptcy court under 11 U.S.C. 523(a)(4) for a breach of fiduciary duty. Texas Skyline then fought to lift the stay of the state court judgment. Woerner contested and lost, and the stay of state court proceedings was lifted. Woerner also contested adversary proceedings brought by John Baker II ("Baker"), one of the other active creditors in this case. On November 2, 2010, Woerner filed Amended Schedules (b) and (c) and also amended his Statement of Financial Affairs.

B & N helped Woerner negotiate with his creditors. Woerner and the adversarial creditors agreed to mediation with a bankruptcy judge. Talks with Texas Skyline broke down, but on December 17, 2010, B & N filed a Joint Motion to Compromise with the bankruptcy court, which B & N maintained would have resolved this case had it completely settled. Yet Baker insisted that the settlement was merely a proposal, objected to it and refused to execute

it. For these negotiation services, B & N sought over $6,000. *See infra* Part I(D).

B & N also investigated the concealment of some of Woerner's assets and subsequently amended Woerner's financial disclosures to include approximately $9,000 of additional personal goods, including investments, jewelry, firearms, and fur coats that were not originally disclosed. This concealment prompted Baker to move to convert Woerner's case from a Chapter 11 reorganization to a Chapter 7 trustee-administered liquidation. *See* 11 U.S.C. § 1112(b)(1) (requiring the bankruptcy court to convert or dismiss a Chapter 11 case upon finding "cause"). Texas Skyline moved to intervene in the motion to convert. B & N litigated Woerner's attempts to press for a motion to approve the settlement and oppose the motion to convert. The billing records show that the firm (1) prepared a motion to sell some of Woerner's personal property for the purpose of funding an appeal from the state-court judgment; (2) started investigating potential causes of action against Texas Skyline and Baker; (3) drafted a disclosure statement and reorganization plan; and (4) deposed a representative from Texas Skyline about potential mismanagement of partnership assets.

## C. Woerner's Case Is Converted to Chapter 7, Ending B & N's Employment

The bankruptcy court conducted a hearing on the pending motions, denying the motion to approve settlement and granting the motion to convert on April 20, 2011. As the bankruptcy court summarized in its oral ruling on the fee application, "the Court found that it was appropriate to convert this case to Chapter 7 because the Court was of the opinion . . . that [Woerner] w[as] not forthright as a Debtor[] under the Bankruptcy Code in terms of listing [his] assets and giving proper evaluations." On September 3, 2011, B & N filed an application for approximately $134,000 in fees under § 330. Following the U.S.

Trustee's objection, B & N amended its fee application. B & N ultimately sought $130,656.50 in fees, and $5,793.37 in expenses. The Trustee renewed its objection to the fees. Skyline also objected, arguing that all of the fees were unreasonable because (1) Woerner never had the means to fund a Chapter 11 reorganization and (2) B & N's actions were dilatory and required creditors to incur unnecessary attorneys' fees.

## D. The Bankruptcy Court Disallows Most of B & N's Requested Fees

The bankruptcy court then conducted a hearing on the fee request. B & N offered testimony from Woerner's nonbankruptcy counsel and two attorneys from B & N to prove that (1) Woerner brought the case for a legitimate purpose and (2) the litigation costs were driven up by Texas Skyline's alleged intransigence.

The bankruptcy court took the fee application under advisement and entered an oral ruling on April 11, 2012. Citing *In re Pro–Snax Distributors, Inc.*, 157 F.3d 414 (5th Cir. 1998), the court explained that, for a service to be compensable under § 330, fee applicants must prove that the service resulted in an "identifiable, tangible, and material benefit to the estate." *Id.* at 426. Applying that standard, the bankruptcy court awarded the expenses in full, but only $19,409.00 in fees, an 85% reduction. The bankruptcy court arrived at $19,409.00 by considering separately each category of fees (such as case administration, resisting a motion to lift the stay, preparing bankruptcy schedules, and similar categories), granting some in whole, some in part, and denying others. Most of the disallowed fees were denied due to B & N's lack of success. Specifically, the bankruptcy court found much of B & N's billed time was not of identifiable benefit to the estate.

The following table (based on U.S. Trustee's Br. 16–17) summarizes the bankruptcy court's findings:

No. 13-50075

| CATEGORY | FEE REQUESTED | FEE ALLOWED | FINDING |
|---|---|---|---|
| **Asset Analysis and Recovery** | 8,692 | 1,500 | Fees for initial analysis reasonable<br><br>Fees for subsequent investigations unreasonable<br><br>Fees for Texas Skyline deposition not beneficial to the estate |
| **Alternative Dispute Resolution** | 6,647 | 6,647 | Reasonable |
| **Case Administration** | 46,532 | 5,000 | Fees for mandatory meetings and filings reasonable<br><br>Fees for litigating conversion motion and settlement motion not beneficial to the estate |
| **Claims Determination** | 14,301 | 0 | No benefit to the estate |
| **Dischargeability** | 25,170 | 0 | No benefit to the estate |
| **Disclosure Statement and Plan** | 13,075 | 0 | No material benefit to the estate |
| **Employment and Fees** | 3,172 | 0 | No material benefit to the estate |
| **Filing of Schedules and Statement of Financial Affairs** | 5,000 | 2,500 | Redundant with asset analysis, unreasonable |
| **Lift Stay** | 3,810 | 1,000 | Abnormally high |

No. 13-50075

| | | | |
|---|---|---|---|
| **Business Operations** | 562 | 562 | Reasonable |
| **Client Communications** | 2,200 | 2,200 | Reasonable |
| **Financing** | 225 | 0 | Unreasonable |
| **Sale Use and Lease of Assets** | 1,252 | 0 | No benefit to the estate |
| **TOTAL** | $130,638 | $19,409 | |

B & N then moved to certify a direct appeal to the Fifth Circuit. In denying the motion, the bankruptcy court also noted its ruling was informed by the bad conduct of the Debtors themselves, which should have lead B & N to withdraw from the case sooner than it ultimately did. As the U.S. Trustee pointed out at the time, "[T]he only issue that would be advanced is whether or not Barron and Newburger is entitled to get paid fees in a case that is hopelessly insolvent."

The district court entered its final order affirming the bankruptcy court on January 17, 2013. It ruled that the record supported finding that B & N's fees were unreasonable under § 330 and *Pro–Snax*. According to the district court, the record showed that "this bankruptcy proceeding was doomed at the outset, and arguably could not have been filed in good faith under Chapter 11."

## II. JURISDICTION AND STANDARD OF REVIEW

B & N timely filed a notice of appeal from the bankruptcy court's order to the United States District Court for the Western District of Texas under 28 U.S.C. § 158(c)(1)(B) and Federal Rule of Bankruptcy Procedure 8002(a). The district court had jurisdiction over Woerner's Chapter 11 bankruptcy case under 28 U.S.C. §§ 157 and 1334. We have jurisdiction over this timely appeal from the district court's order under 28 U.S.C. § 158(d)(1) and Federal Rule of Appellate Procedure 4(a)(1)(B).

This court reviews the district court's decision "by applying the same

7

standard of review to the bankruptcy court's conclusions of law and findings of fact that the district court applied." *In re Cahill*, 428 F.3d 536, 539 (5th Cir. 2005) (citation omitted). Accordingly, this court reviews the bankruptcy court's legal conclusions de novo and its findings of fact for clear error. *Id.* (citations omitted). By contrast, this court reviews the bankruptcy court's award of attorneys' fees for abuse of discretion. *Id.* (citing *In re Coho Energy, Inc.*, 395 F.3d 198, 204 (5th Cir. 2004); *In re Barron,* 325 F.3d 690, 692 (5th Cir. 2003)). "An abuse of discretion occurs where the bankruptcy court (1) applies an improper legal standard or follows improper procedures in calculating the fee award, or (2) rests its decision on findings of fact that are clearly erroneous." *Id.* (citing *In re Evangeline Ref. Co.,* 890 F.2d 1312, 1325 (5th Cir. 1989)).

## III. DISCUSSION

B & N argues that the district court erred in two ways: first, in applying the wrong standard for awarding attorney's fees and, second, in misapplying that standard. We address these issues in turn.

## A.  Whether the Bankruptcy Court Used the Proper Standard

B & N contends that the court applied the wrong standard for awarding attorney's fees under § 330 by using a so-called "hindsight" test based on this court's decision in *Pro–Snax*. Instead, B & N argues that its fees would have been allowed under either of its two proposed alternative tests: the "business judgment approach" and the "prospective approach."

### 1. Statutory Framework

#### a. Reorganization Under Chapter 11 of the Bankruptcy Code

When a debtor commences a bankruptcy case, a legal entity known as the "estate" is created. 11 U.S.C. § 541(a). The estate contains all of the debtor's property, subject to exceptions not applicable here. *Id.* When a debtor files a case to reorganize under Chapter 11, the debtor becomes the debtor-in-

possession of the estate and takes on the rights, powers, and fiduciary duties of a trustee. *Id.* §§ 1101, 1106–1108; *see CFTC v. Weintraub*, 471 U.S. 343, 355 (1985). The debtor-in-possession retains control over the property of the estate and must repay creditors according to the terms of a reorganization plan. *Id.* § 1123. The proponent of a reorganization plan—usually, but not necessarily, the debtor-in-possession—must provide a court-approved disclosure statement that contains "adequate information" about the assets, liabilities, and financial affairs of the debtor sufficient to enable creditors to make an "informed judgment" about the plan. *Id.* § 1125. Creditors may accept or reject the reorganization plan in a special voting process governed by the Bankruptcy Code. *Id.* § 1126.

If the creditors accept the reorganization plan, it must then be confirmed by the bankruptcy court. *Id.* § 1129. The confirmation of the reorganization plan typically brings the bankruptcy case to an end. *Id.* § 1141.

### b. Compensation to Professionals Under Chapter 11

The debtor-in-possession may ask the bankruptcy court for permission to employ professionals, including attorneys, to assist the debtor-in-possession with the reorganization of the bankruptcy estate. *Id.* § 327.

Congress has enacted a uniform scheme for retaining and compensating such court-authorized attorneys under *Id.* §§ 327–330. First, under § 327(a), the debtor must get the bankruptcy court's approval to employ the attorney. *Id.* § 327(a). Then, under § 330(a), an attorney that has been employed under § 327(a) may request "reasonable compensation for actual, necessary services rendered." *Id.* § 330(a)(1)(A). The bankruptcy court may exercise its discretion, upon motion or sua sponte, to "award compensation that is less than the amount requested." *Id.* § 330(a)(2). Section 330(a)(3) further directs courts to "consider the nature, the extent, and the value of" the legal services provided

No. 13-50075

when determining the amount of reasonable compensation to award, "taking into account all relevant factors, including," but not limited to:

    (A) the time spent on such services;
    (B) the rates charged for such services;
    (C) whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title;
    (D) whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed; [and]
    . . .
    (F) whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title.

*Id.* § 330(a)(3).

Section 330 further lists those services for which a court may *not* provide compensation:

    (4)(A) Except as provided in subparagraph (B), the court shall not allow compensation for—
        (i) unnecessary duplication of services; or
        (ii) services that were not—
            (I) reasonably likely to benefit the debtor's estate; or
            (II) necessary to the administration of the case.

*Id.* § 330(a)(4)(A).

## 2. Fifth Circuit Case Law: *Pro–Snax*

The underlying bankruptcy case at issue in *Pro–Snax* was initiated when creditors filed an involuntary Chapter 7 bankruptcy petition against the debtor. *Pro–Snax,* 157 F.3d at 416. The bankruptcy court later converted the case to Chapter 11 upon the debtor's consent and appointed a Chapter 11 trustee soon thereafter. *Id.* The debtor proposed a plan of reorganization, but the bankruptcy court denied confirmation of the plan based largely on the objections raised by creditors. *Id.* at 416–17. The case was then converted

No. 13-50075

back to a Chapter 7 proceeding. *Id.* at 417.

The law firm of Andrews and Kurth ("A & K") provided legal services to the debtor both before and after the case had been converted to Chapter 11. *Id.* at 416–17. Upon A & K's fee application, the bankruptcy court awarded A & K $30,000 in fees and $7,500 in expenses. *Id.* at 417 n.4. The district court reversed the award on the ground that § 330 precluded A & K from being compensated from the assets of the estate for work performed after the Chapter 11 trustee had been appointed. *Id.* at 419. The district court remanded the case to the bankruptcy court, however, for a recalculation of fees in light of the creditors' concession that A & K was entitled to compensation for the work it performed before the Chapter 11 trustee was appointed. *Id.* at 419. In so doing, the district court instructed the bankruptcy court to consider the "backdrop of the American Rule, any statutory exceptions to that rule applicable in this case, and the usual standards for the award of fees to be paid by other parties to the litigation." *Family Snacks, Inc. v. Andrews & Kurth, L.L.P. (In re Pro–Snax Distribs., Inc.),* 212 B.R. 834, 839 (N.D. Tex. 1997).

On appeal, our court divided its discussion of the merits into two parts. It first took up the issue of "whether a Chapter 11 debtor's attorney may be compensated for work done after the appointment of a trustee under § 330(a) of the Bankruptcy Code." *Pro–Snax,* 157 F.3d at 416. After considering the statutory language of § 330, congressional intent, and public policy, the Court ultimately concluded that § 330, on its face, clearly precludes any award of fees to a debtor's attorney for that attorney's work performed *after* a Chapter 11 trustee has been appointed. *Id.* at 425–26. The Supreme Court later vindicated this holding in *Lamie v. U.S. Trustee,* 540 U.S. 526 (2004).

In the second, briefer part of the opinion, of relevance here, we discussed the applicable standard to evaluate A & K's fee application for the services it

11

rendered to the debtor before the trustee was appointed. This court considered two possible tests advocated by the parties. A & K urged the use of a "reasonableness" test—"whether the services were objectively beneficial toward the completion of the case *at the time they were performed.*" *Id.* at 426 (emphasis added). The creditors, on the other hand, advanced a hindsight approach—whether the services *"resulted* in an identifiable, tangible, and material benefit to the bankruptcy estate." *Id.* (emphasis added). With little analysis or explanation—the opinion cites only one case in support of its position, *In re Melp, Ltd.,* 179 B.R. 636, 640 (E.D. Mo. 1995)—we adopted the stricter "hindsight" or "material benefit" measure. The court expressed its reluctance "to hold that any service performed at any time need only be reasonable to be compensable." *Id.*

### 3. Analysis

The bankruptcy court below relied on the holding in *Pro–Snax* in making its ruling on the fee application. In its oral ruling on the fee application, the court emphasized that "[Chapter 11 attorney's] fees are at risk if there is not the attendant material benefit to the estate." As the district court succinctly put it: "[B & N] argues this [reliance on *Pro–Snax*] was error, but *Pro-Snax* is binding, Fifth Circuit precedent."

B & N attempts to avoid the holding of *Pro–Snax* by arguing that the hindsight test is merely one interpretation of *Pro–Snax.* But, as the U.S. Trustee points out, interpreting *Pro–Snax* to require a reasonableness test would be to "authorize something that the prior panel flatly prohibited" and is not "any different from overturning the decision." *See Pro–Snax*, 157 F.3d at 426. Because we are still bound by the previous panel's "explications of the governing rules of law," we cannot overrule past precedent. *Gochicoa v. Johnson*, 238 F.3d 278, 287 n.11 (5th Cir. 2000) ("[A]s a general rule, the

principle of *stare decisis* directs us to adhere not only to the holdings of our prior cases, but also to their explications of the governing rules of law." (citation and internal quotation marks omitted)); *see also Jacobs v. Nat'l Drug Intelligence Ctr.*, 548 F.3d 375, 378 (5th Cir. 2008) ("It is a well-settled Fifth Circuit rule of orderliness that one panel of our court may not overturn another panel's decision, absent an intervening change in the law, such as by a statutory amendment, or the Supreme Court, or our *en banc* court.").

Further, any argument that *Pro–Snax* was wrongly decided is irrelevant to the key question before us: whether the bankruptcy court erred by applying the wrong standard. Just as the district court said, whether "*Pro–Snax* was a wrongly decided, errant opinion . . . is an argument properly addressed to higher tribunals," but *Pro–Snax* is still the governing standard. Therefore, based on our review of the statutory framework and this court's decision in *Pro–Snax*, we conclude that the bankruptcy court did not apply the wrong standard and thus did not abuse its discretion.

## B. Whether the Bankruptcy Court Erred in Finding that B & N Was Entitled to Only a Small Subset of the Fees Requested

B & N further contends that the court abused its discretion by not awarding fees for filing and amending schedules, which it contends provided an identifiable, tangible, and material benefit and therefore should be awarded under any standard.[2] B & N argues that the bankruptcy court did not reward the firm for necessary activity—namely, amending schedules and statements of financial affairs, citing 11 U.S.C. § 521(a)(1). The bankruptcy court reached the conclusion that B & N could not recover for these services because "[d]ebtor's counsel should withdraw and not run up fees." Or as the U.S.

---

[2] We do not consider any other fees that B & N says it seeks on appeal. B & N only supports its arguments on this particular category of fees and inadequately briefed the others. Therefore, we consider the arguments about the other fees effectively waived.

No. 13-50075

Trustee brief glosses it, "it was not reasonable [for] the estate to foot the bill for the debtor's overt misconduct."  More importantly, nothing in the text of § 330 or *Pro–Snax* suggests that these fees be exempt from the bankruptcy court's discretion to determine reasonable compensation.

Therefore, we hold that the district court did not abuse its discretion in denying these fees.

## IV.  CONCLUSION

For the foregoing reasons, we AFFIRM the bankruptcy court's ruling on B & N's fee application.

No. 13-50075

EDWARD C. PRADO, Circuit Judge, specially concurring:[*]

Even though we find no error in the bankruptcy court's use of the *Pro–Snax* standard to resolve the attorney fee application in this case, I write separately to note that the *Pro–Snax* standard may be misguided. It appears to conflict with the language and legislative history of § 330, diverges from the decisions of other circuits, and has sown confusion in our circuit.

The plain language of § 330 runs counter to *Pro–Snax*'s holding that only services that produce an actual benefit are compensable. Section 330 gives a bankruptcy court discretion to determine the amount of reasonable compensation. But the statute also constrains that discretion by requiring the court to "tak[e] into account" a set of listed factors, including "whether the services were necessary to the administration of, or beneficial *at the time at which the service was rendered*." 11 U.S.C. § 330(a)(3)(C) (emphasis added).

The statute reinforces this point in an accompanying section: a court must disallow any compensation when "the services were not reasonably likely to benefit the debtor's estate or necessary to the administration of the case." § 330(a)(4)(A)(ii)(I); *see In re ASARCO, L.L.C.*, 751 F.3d 291 (5th Cir. 2014) ("Section 330 states twice, in both positive and negative terms[,] that professional services are compensable only if they are likely to benefit a debtor's estate or are necessary to case administration." (citation omitted)); *In re Ames Dep't Stores, Inc.*, 76 F.3d 66, 71 (2d Cir. 1996) (referring to "reasonably likely to benefit the debtor's estate" as an "inverse construction" of § 330(a)(3)(C)), *abrogated on other grounds by Lamie v. U.S. Trustee*, 540 U.S. 526 (2004). Read together, a court may compensate an attorney for services that are "reasonably likely to benefit" the estate and adjudge that reasonableness "at the time at which the service was rendered."

---

[*] Judges Reavley and Owen join this special concurrence.

No. 13-50075

Section 330, then, explicitly contemplates compensation for attorneys whose services were reasonable when rendered but which ultimately may fail to produce an actual benefit. "Litigation is a gamble, and a failed gamble can often produce a large net loss even if it was a good gamble when it was made." *In re Taxman Clothing Co.*, 49 F.3d 310, 313 (7th Cir. 1995). The statute permits a court to compensate an attorney for any activities that were "necessary," but also for any good gambles—that is, services that were objectively reasonable at the time they were made—even when those gambles do not produce an "identifiable, tangible, and material benefit.[1] What matters is that, prospectively, the choice to pursue a course of action was reasonable.[2]

The legislative history of § 330 provides additional support for this reading. When Congress enacted § 330 in 1978, it relaxed the previously stringent standard bankruptcy courts applied in reviewing professional fee awards. 3 *Collier on Bankruptcy* ¶ 330.LH[4] (16th ed. 2014). Under the old regime, our court enforced a "strong policy . . . that estates be administered as efficiently as possible." *In re First Colonial Corp. of Am.*, 544 F.2d 1291, 1299 (5th Cir. 1977) (citations omitted), *superseded by statute,* 11 U.S.C. § 330. This policy originated in the idea that "[s]ince attorneys assisting the trustee in the

---

[1] One could infer that this language also limits recovery for unreasonable services. A benefit conferred on the basis of a bad gamble would not be "reasonably likely to benefit the estate at the time at which the service was rendered." Therefore the "actual benefit" test is both over- and under-inclusive under the terms of the statute: it fails to reward good gambles that do not pay off; but it also rewards bad gambles that did pay off even when the risk of failure and the cost of the service made that gamble unreasonable.

[2] *In re Taxman Clothing Co.* provides a concrete example:

Suppose that [debtor] had been seeking to recover . . . $330,000 and that he had had a 90 percent chance of winning a judgment for that amount and successfully defending the judgment in this court. An expenditure of $85,000 in attorney's fees would not be unreasonable when the expected benefit was $297,000 ($330,000 x .9), so if the attorney performed competently but simply was unlucky and lost he would have a good claim for his fees.

49 F.3d at 313.

administration of a bankruptcy estate are acting not as private persons but as officers of the court, they should not expect to be compensated as generously for their services as they might be were they privately employed." *Id.* (citation omitted); *see also Mass. Mut. Life Ins. Co. v. Brock*, 405 F.2d 429, 432–33 (5th Cir. 1968) (holding that the interest of the public—especially the debtor and creditors—could limit compensation to a debtor's counsel), *superseded by statute,* 11 U.S.C. § 330.

But "[i]n enacting section 330, Congress intended to move away from doctrines that strictly limited fee awards" and instead provide compensation "commensurate with the fees awarded for comparable services in non-bankruptcy cases." *In re UNR Indus., Inc.*, 986 F.2d 207, 208–09 (7th Cir. 1993) (citing, *inter alia,* H.R. Rep. No. 95–595, at 329–30 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5963, 6286); *see also* 3 *Collier on Bankruptcy* ¶ 330.03[a][3]. To that end, § 330 instructed courts to award "reasonable compensation" for "actual, necessary services" "based on the nature, the extent, and the value of such services, the time spent on such services, and the cost of comparable services other than in a case under [the Code]." 11 U.S.C. § 330(a). Congress took a further step in 1994 when it "codif[ied] many of the factors previously considered by courts in awarding compensation and reimbursing expenses." 3 *Collier on Bankruptcy* ¶ 330.LH[5]; *see* Pub. L. No. 103-394, § 224, 108 Stat. 4106 (1994).[3] In particular, Congress added the language at issue here: 11 U.S.C. §§ 330(a)(3)(C) & 330(a)(4)(A).

The drafting history of those provisions suggests that Congress

---

[3] For example, our circuit was among the first to conclude that the factors developed for determining reasonable attorney's fees in the non-bankruptcy context were "equally useful" in assessing bankruptcy attorney's fees. *First Colonial*, 544 F.2d at 1299 (applying factors from *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 717–19 (5th Cir. 1974), to bankruptcy fee determination). Those same factors formed the foundation for the 1994 revision. *See* 3 *Collier on Bankruptcy* ¶ 330.LH[5], n.12.

considered and specifically rejected an actual benefit test. The Senate version contained the seed of the eventual guidelines for reasonable compensation under § 330. *See* S. 540, 103d Cong. § 309 (as reported by S. Comm. on the Judiciary, Oct. 28, 1993). The Bill reported out of the Senate Judiciary Committee differed in at least one important respect from the eventual Act, however. That Senate draft only instructed courts to consider "whether the services were necessary in the administration of or beneficial toward the completion of a case under [the Bankruptcy Code]." *Id.* After adopting a floor amendment, however, the Senate added the words "at the time at which the service was rendered" after "beneficial." *See* 140 Cong. Rec. 8383 (1994) (setting out amendment 1645 to S. 540, April 21, 1994); S. 540, 103d Cong. § 310 (as passed by Senate, April 26, 1994); *see also Lamie*, 540 U.S. at 539–40 (discussing amendment 1645).[4] The House version of the legislation did not include any guidelines for determining the reasonableness of attorney compensation. *See generally* H.R. 5116, 103d Cong. (as reported by H. Comm. on the Judiciary, October 22, 1994). The legislative process therefore strongly suggests that Congress could not have intended the language in § 330 to impose an actual benefit requirement determinable by a court only at the completion of the case.

Besides contravening the plain effect of § 330's language, the actual benefit test of *Pro–Snax* has put our circuit in unnecessary conflict with our sister circuits. In light of the plain language of § 330(a)(4)(A), the Second, Third, and Ninth Circuits have rejected the actual benefit test required by *Pro–*

---

[4] Unlike in *Lamie*, where the petitioner contended that a deletion introduced by amendment 1645 was a "scrivener's error," a later floor speech by Senator Howard Metzenbaum, the amendment's proponent, suggests that the added language was intended. *See* 140 Cong. Rec. 28753 (statement of Sen. Metzenbaum) (reiterating that the factors include "whether the services were beneficial at the time they were rendered").

No. 13-50075

*Snax.*  In *In re Ames Department Stores, Inc.*, the Second Circuit specifically rejected an approach that would make fee award "contingent upon a showing of actual benefit to the estate," opting instead to give effect to the statute's "reasonably likely to benefit the estate" standard.  76 F.3d at 71.  The Third Circuit rejected the very approach our court adopted in *Pro–Snax*, concluding that it departed from the statute by imposing a "heightened standard" and requiring evaluation "by hindsight."  *In re Top Grade Sausage, Inc.*, 227 F.3d 123, 132 (3d Cir. 2000) *abrogated on other grounds by Lamie*, 540 U.S. 526.  Finally, the Ninth Circuit held that § 330(a)(4)(A) superseded its past precedent, which had "requir[ed] that the services actually provide an 'identifiable, tangible and material benefit to the [debtor's] estate.'"  *In re Smith*, 317 F.3d 918, 926 (9th Cir. 2002) (quoting *In re Xebec,* 147 B.R. 518, 523 (B.A.P. 9th Cir. 1992)).  In addition, the Seventh Circuit has applied a similar rule, without specifically relying on the post-1994 guidelines.  *See In re Taxman Clothing Co.*, 49 F.3d at 314–16 (holding that the bankruptcy court abused its discretion in granting a fee award to an attorney whose preference action did not have a reasonable likelihood of benefiting the estate).

While *Pro–Snax* purported to consider the post-1994 guidelines of § 330(a), its lone citation for its actual benefit test, *In re Melp*, interpreted the pre-1994 version of § 330.  *See* 179 B.R. at 639 (quoting pre-1994 language).  Indeed, the only other circuit precedents to apply an actual benefit requirement came to that conclusion prior to 1994 or based entirely on pre-1994 precedent for determining "reasonable compensation."  *See In re Kohl*, 95 F.3d 713, 714 (8th Cir. 1996) ("[A]n attorney fee application in bankruptcy will be denied to the extent the services rendered were for the benefit of the debtor and did not benefit the estate."  (quoting *In re Reed*, 890 F.2d 104, 106 (8th Cir. 1989)); *In re Lederman Enters., Inc.*, 997 F.2d 1321, 1323 (10th Cir. 1993) ("An

element of whether the services were 'necessary' is whether they benefited the bankruptcy estate."); *Grant v. George Schumann Tire & Battery Co.*, 908 F.2d 874, 883 (11th Cir. 1990) (interpreting pre-1994 § 330 as requiring that attorney's appeal bring a benefit to the estate).  As discussed above, though, whereas the pre-1994 language did not provide guidance on whether to consider the reasonable likelihood a service would benefit the estate, the post-1994 language clearly foreclosed an actual benefit test by requiring that the court evaluate the likelihood of benefit to the estate at the time the service was rendered.

The *Pro–Snax* actual benefit test has led to confusion among the courts of our circuit.  According to one Fifth Circuit bankruptcy practitioner, "the *Pro–Snax* decision is of constant discussion and concern."  William L. Medford, *Further Evolution of Professional Compensation Under Pro-Snax the New and Improved Standard for Getting Paid*, Am. Bankr. Inst. J., July 2012, at 16.  As one bankruptcy court observed in its survey of post–*Pro–Snax* rulings:

> [A]ll courts interpreting *Pro–Snax* have reached the conclusion that some sort of retrospective analysis is required.  Lower courts have adopted differing views of what type of retrospective analysis should be employed and have disagreed whether a prospective analysis may be considered in determining whether *Pro–Snax* is satisfied.

*In re Broughton Ltd. P'ship*, 474 B.R. 206, 209–10 n.5 (Bankr. N.D. Tex. 2012) (collecting cases).  So, for example, one district court interpreted the *Pro–Snax* requirement as a threshold issue of entitlement to compensability under § 330(a)(1)(A), not a gloss on the guidelines for reasonable compensation under § 330(a)(3) and (a)(4).  *Kaye v. Hughes & Luce, LLP* (*In re Gadzooks, Inc.*), No. 3:06-CV-0186-3 B, 2007 WL 2059724, *9 (N.D. Tex. July 13, 2007).  Yet *Pro–Snax* did not purport to alter the threshold compensability of services by interpreting "necessary" services to include only those that result in an actual

benefit to the estate. By contrast, in *In re Broughton* characterized *Pro–Snax* as a practical "problem" and contorted *Pro–Snax* to conclude that it permits a fee award to "a professional [who] was justifiably pursuing a legitimate, realizable goal of the fiduciary client." 474 B.R. at 213, 218. The splintered approaches to applying *Pro–Snax* underscore the difficulty of squaring that decision with the statute, and the practical importance of doing so.

We note that application of the § 330(a) standard without *Pro–Snax* would probably lead to the same result in this case. The only fees that B & N adequately challenge on appeal—amending schedules and statements of financial affairs—were not reasonably likely to benefit the estate even when counsel rendered those services. We also note that overturning the holding on attorney's fees in *Pro–Snax* would not alter that case's principal holding, affirmed by the Supreme Court in *Lamie*, that debtor's attorneys may not recover fees for services rendered after the case was converted to an involuntary Chapter 7 bankruptcy.

For these reasons, we urge reconsideration of the standard in *Pro–Snax* by this court sitting en banc.